[Nos. S003148, S003588. July 17, 1989.]

DOCTORS' COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JOSE ANTONIO VALENCIA, Real Party in Interest.

## COUNSEL

H. Gilbert Jones, Bonne, Jones, Bridges, Mueller & O'Keefe, Alan G. Martin, Greines, Martin, Stein & Richland, Roxanne L. Holmes, James C. Krieg, Elliot L. Bien and Bronson, Bronson & McKinnon for Petitioners.

James S. Link, Spray, Gould & Bowers, Michael J. Brady, James P. Wagoner, Ellis J. Horvitz, Peter Abrahams, Lisa Perrochet, Loren Homer Kraus and Horvitz, Levy & Amerian as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Bruce G. Fagel and Richard Akemon for Real Party in Interest.

## OPINION

**KAUFMAN, J.—** ██ The question presented is whether an insurer, its attorney retained to assist in the defense of an insured against a third party claim, and an expert witness, also retained by the insurer for that purpose, can be held liable for damages to the claimant for a *conspiracy* to violate Insurance Code section 790.03, subdivision (h)(5) (section 790.03(h)(5)), which makes it an unfair practice under certain circumstances for an insurer to refrain from attempting to effectuate a prompt and fair settlement of a

claim after liability has become reasonably clear.[1] A petition for a writ of mandate, directing the respondent superior court to sustain a demurrer to a complaint's allegations of such a conspiracy, was summarily denied by the Court of Appeal with a citation to *Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446]. We granted review and shall conclude that the conspiracy claim is barred by this court's decision in *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032], and that *Wolfrich* must be disapproved insofar as it holds otherwise.

The complaint, filed by real party in interest Jose Antonio Valencia (hereafter plaintiff), alleges two causes of action. Though the first cause of action is not challenged here, it is essentially incorporated into, and lays the foundation for, the disputed conspiracy claim of the second cause of action.

The first cause of action is directed against The Doctors' Company and The Doctors' Management Company (collectively insurer). It alleges substantially as follows: The insurer issued a policy covering the liability of M. F. Osman, M.D., for acts of medical malpractice in connection with plaintiff's birth, complained of in a prior action brought by plaintiff against Dr. Osman and others. Plaintiff offered to settle with Osman for the policy limits of $500,000. The insurer intentionally withheld from its "designated expert," Keith Russell, M.D., the deposition of Dr. Osman which revealed the latter's negligence. Without the deposition and without any records prepared by Osman, Russell rendered an opinion that Osman was not negligent, thus giving the insurer a plausible excuse for refusing plaintiff's settlement offer. After that refusal, the action against Osman was tried before a jury, which returned a verdict of $2 million on which judgment was entered and has become final. The insurer's conduct is alleged to have violated its statutory duty to attempt settlement, imposed by section 790.03(h)(5) (fn. 1, *ante*).

The second cause of action is directed not only against the insurer, but also against Dr. Russell (the insurer's expert) and against a law firm, Rigg, Dean & Mower, and certain of the firm's partners (firm and partners being hereafter referred to as the attorneys). After incorporating all the allegations of the first cause of action by reference, the second cause of action

---

[1] All section references are to the Insurance Code unless otherwise indicated. Section 790.03 provides: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . [¶] (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . . [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Section 790.03 applies only to various kinds of insurers and to "other persons engaged in the business of insurance" (§ 790.01).

alleges substantially as follows: The insurer hired the attorneys to represent Dr. Osman, who was also represented by separate personal counsel. Despite the demands by Osman and his personal counsel that the insurer settle the case for the policy limit of $500,000, the insurer and its attorneys refused to do so. Defendants, i.e., the insurer, the attorneys, and Dr. Russell, "entered into an agreement, scheme and plan to deprive [plaintiff] of the benefits" of section 790.03(h)(5), "which would have been provided by a prompt, fair and equitable settlement." The insurer "conspired with" the attorneys "to locate a local doctor who would agree to only partially review the facts and records and subsequent depositions surrounding the birth of [plaintiff] who [*sic*] would then give a false medical opinion which provided [insurer] and [attorneys] a plausible sounding excuse to deny [plaintiff's] request for a prompt, fair and equitable settlement of his claims." Dr. Russell "conspired with" the insurer and the attorneys and agreed with them not to review Dr. Osman's deposition before giving his own opinion under oath at his own deposition.

The insurer, the attorneys, and Dr. Russell all filed general demurrers to the complaint. The demurrers were overruled.[2] The demurring defendants then petitioned the Court of Appeal for a writ of mandate to compel the trial court to sustain their demurrers. The Court of Appeal summarily denied issuance of the writ, and both the insurer and the attorneys sought review by this court. We granted review, consolidated the petition of the attorneys (S003588) with that of the insurer (S003148), and issued alternative writs requiring a showing of cause why the trial court should not be ordered to sustain petitioners' demurrers to the second cause of action without leave to amend.[3] We also stayed trial of the underlying action pending completion of this writ proceeding.

Plaintiff's complaint is based on this court's holding in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], that a plaintiff who has obtained judgment on a tort claim against an insured defendant may sue the insurer for violating section 790.03(h)(5), which specifies failure to attempt settlements of claims as an unfair practice in the business of insurance as set forth in footnote 1, *ante*. In *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58], that holding was overruled prospectively, thus permitting actions filed before the finality of *Moradi-Shalal*, such as the one before us, to continue in reliance on *Royal Globe*.

[2] The action was commenced in the Riverside County Superior Court but was transferred on motion to the Los Angeles County Superior Court where the demurrers were filed. In addition to overruling the demurrers, the trial court granted motions to strike two paragraphs which we accordingly treat as deleted from the complaint.

[3] Though Dr. Russell did not seek relief in this court, the demurrers of the insurer and the attorneys challenge his alleged status as their coconspirator.

The duty to refrain from violating section 790.03(h)(5) is imposed only on "persons engaged in the business of insurance" (§ 790.01). (See also § 790.02.) There is no allegation in the complaint that either the attorneys or Dr. Russell are or were engaged in the insurance business, and plaintiff does not so contend. Accordingly, those defendants, unlike the insurer, are not bound by section 790.03(h)(5). The gravamen of the complaint against those defendants is that they and the insurer conspired to "deprive [plaintiff] of the benefits of [section 790.03] and to deny [plaintiff] any sums of money for [his] injuries which would have been provided by a prompt, fair and equitable settlement." Because the complaint does not purport to rely on any duty to settle claims other than that imposed by section 790.03(h)(5) on insurers and persons in the insurance business, the issue before us is whether the insurer, the attorneys and Dr. Russell can be held liable for a conspiracy to violate a duty peculiar to the insurer.

■ "A civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage. [Citations]." (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].) ■ "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. [Citations.]" (*Mox Incorporated* v. *Woods* (1927) 202 Cal. 675, 677-678 [262 P. 302]; accord *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45].)

■ A cause of action for civil conspiracy may not arise, however, if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty. Thus, in *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, the plaintiff alleged that his insurers and their adjusters and attorneys had conspired to deny him benefits for an insured fire loss and in furtherance of the conspiracy had (1) encouraged criminal charges by falsely implying to an official investigator and at a preliminary hearing that the plaintiff had a motive to commit arson, (2) used the plaintiff's failure to appear for examination under oath before the insurers' representative (see §§ 2070, 2071) as a pretext for denying liability under the policies even though they knew the plaintiff would not appear during the pendency of the criminal charges, and (3) refused to accept the plaintiff's offer to appear for examination after the charges were dropped. We held that these allegations stated a cause of

action against the defendant *insurers* for breach of their implied covenant of good faith and fair dealing by refusing, without proper cause, to compensate the plaintiff for a fire loss covered by their insurance policies. (9 Cal.3d at pp. 570-575.)

We further held, however, that the insurers' adjusters and attorneys were *not* liable for the alleged conspiracy. We first pointed out that the "plaintiff [Gruenberg] contends that these non-insurer defendants breached *only* the duty of good faith and fair dealing; therefore, we need not consider the possibility that they may have committed another tort in their respective capacities as total strangers to the contracts of insurance. Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing." (9 Cal.3d at p. 576, italics added.)

We then invoked the rule that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. [Citations.]" (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72 [35 Cal.Rptr. 652].) "This rule, as was explained in *Wise* (at pp. 72-73) 'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.'" (*Gruenberg, supra,* 9 Cal.3d at p. 576.)

▆▆ In the present case, the only duty toward plaintiff claimed to have been breached as a result of the defendants' alleged conspiracy is the statutory duty to attempt "in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear" (§ 790.03(h)(5)). That duty is imposed by statute *solely* upon persons engaged in the business of insurance. (§ 790.01.) Because the noninsurer defendants are not subject to that duty and were acting merely as agents of the insurer "and not as individuals for their individual advantage" (*Wise, supra,* 223 Cal.App.2d at p. 72), "they cannot be held accountable on a theory of conspiracy." (*Gruenberg, supra,* 9 Cal.3d at p. 576.)

In *Wolfrich Corp.* v. *United Services Automobile Assn., supra,* 149 Cal.App.3d 1206, however, a complaint was held to have stated a cause of action against attorneys for conspiring with an insurer, whom they represented, to violate section 790.03(h)(5). The court held that the foregoing holding in *Gruenberg* did not relieve the attorneys of liability; it reasoned as follows: "The *Gruenberg-Wise* line of authority provides immunity for attorneys against charges of conspiracy based upon advice rendered to clients

accused of breach of contract—a situation not present in the instant case. Attorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy. [Citations.]" (149 Cal.App.3d at p. 1211.)

That purported distinction misses *Gruenberg*'s point. The attorneys in *Gruenberg* were relieved from liability for helping their insurer-clients to violate the latter's duty of good faith and fair dealing not because the duty was contractual but because it was a duty peculiar to the insurers, not shared by their attorneys. The duty invoked here (and in *Wolfrich*) is likewise peculiar to the insured because the duty is created by a statute which imposes it *only* on persons in the insurance business (§§ 790.01, 790.02, 790.03(h)(5)). ■ ■ ■ ■ Accordingly, *Gruenberg* precludes holding persons acting solely as the insurer's agents or employees liable for a conspiracy to violate that duty or cause its violation by the insurer.[4]

It remains true, of course, that under *other* sets of circumstances "[a]ttorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy" (*Wolfrich, supra,* 149 Cal.App.3d at p. 1211; see Civ. Code, § 1714.10 [setting forth procedural prerequisites for suit on such claims]). For example, an attorney who conspires to cause a client to violate a statutory duty peculiar to the client may be acting not only in the performance of a professional duty to serve the client but also in furtherance of the attorney's own financial gain. Thus, in *Black* v. *Sullivan* (1975) 48 Cal.App.3d 557 [122 Cal.Rptr. 119], the trustors under a deed of trust sued the trust beneficiaries for failing to provide a statement of balance due, as required by Civil Code section 2943, thereby destroying the trustors' opportunity to complete an escrow contract for a profitable sale of the property. Also joined as defendants were the beneficiaries' attorneys, who had taken assignments of the beneficiaries'

---

[4] Plaintiff argues that the noninsurer defendants here cannot be deemed agents or employees within the meaning of *Gruenberg* because the complaint alleges they were independent contractors of the insured. It is settled, however, that an independent contractor may or may not be an agent, and that if a person contracts to act on behalf of another (the principal) and subject to the principal's control *except with respect to physical conduct,* that person is both an agent and an independent contractor. (*City of Los Angeles* v. *Meyers Bros. Parking System, Inc.* (1975) 54 Cal.App.3d 135, 138 [126 Cal.Rptr. 545]; see Rest.2d Agency (1958) §§ 2, subd. (3), 14N.) Conversely, the agent is not an independent contractor if the principal's control is extended to the physical details of the agent's performance, so as to subject the principal to liability for the agent's negligence. (See Rest.2d Agency, *supra,* §§ 220, com. (e), 250.) The persons held immune from the conspiracy charge in *Gruenberg* were an insurance adjusting firm, a law firm, and their respective employees. (9 Cal.3d at p. 576.) The two firms were "engaged" or "retained" by the defendant insurer (*id.,* at p. 570). From these facts and the absence of any contrary indication, it can be fairly inferred that the insurer did not control the details of the firms' manner of performance and that they therefore were independent contractors, as well as agents, of the insurer.

interests as security for loans and for past and future attorney's fees. The attorneys therefore had a personal interest, apart from that of their clients, in regaining the property (which had increased in value) by preventing its sale by the plaintiffs. On these facts, it was held that the attorneys were not personally obligated to provide the statement required by Civil Code section 2943, because their assignments were for security only, but that this lack of individual obligation "[did] not prevent their liability for a failure to comply with that section under a theory that they aided, cooperated and assisted in [the beneficiaries'] noncompliance or conspired to interfere with the escrow contract by preventing the closing of the escrow. [Citations]." (48 Cal.App.3d at p. 567.)

As this holding illustrates, the *Gruenberg-Wise* rule does not preclude the subjection of agents to conspiracy liability for conduct which the agents carry out "as individuals for their individual advantage" and not solely on behalf of the principal (*Wise, supra*, 223 Cal.App.2d at p. 72). The limited nature of that rule is also consistent with the two cases cited by the *Black* court in support of its holding: *Rosenthal* v. *Gould* (1969) 273 Cal.App.2d 239, 243-244 [78 Cal.Rptr. 244] and *Anderson* v. *Thacher* (1946) 76 Cal.App.2d 50, 72 [172 P.2d 533]. In each of those cases a plaintiff, defrauded by means of one defendant's violation of a fiduciary duty, was allowed to recover against another defendant who, though not subject to the fiduciary duty, had conspired in the fraud. Since the nonfiduciary defendants had acted not simply as agents or employees of the fiduciary defendants but rather in furtherance of their own financial gain, they could not have been relieved from liability under the *Gruenberg-Wise* rule.

Also to be distinguished from the present case are claims against an attorney for conspiring with his or her client to cause injury by violating the attorney's own duty to the plaintiff. Such a claim was upheld in *Barney* v. *Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966 [230 Cal.Rptr. 215]. There, the car driven by the plaintiff insured had collided with another car. The insurer retained attorneys to defend the insured against a municipal court action by the driver of the other car, and the insured, through separate counsel, sued the other driver in superior court. Without notice to the insured, the insurer-retained attorneys settled the other driver's claim and filed a dismissal with prejudice of the municipal court action; the dismissal operated as a retraxit barring the insured's superior court action. The insured's conspiracy cause of action against the insurer and the attorneys who had arranged the settlement was upheld since the settlement clearly violated the attorneys' own fiduciary duty to the insured plaintiff (*Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 663 [320 P.2d 140]).

The same principles apply not only to attorneys but to other persons employed or retained by an insurer to discharge its duties under an insurance policy. Thus, in *Younan* v. *Equifax Inc.* (1980) 111 Cal.App.3d 498 [169 Cal.Rptr. 478], the plaintiff alleged a conspiracy among his insurer and two of the insurer's agents to deprive plaintiff of disability insurance benefits by falsely representing that plaintiff would be examined by a medical doctor who would objectively consider plaintiff's claim for benefits when in fact the examination was to be conducted by a psychiatrist who had agreed, by prearrangement with the insurer, to render a false report to provide a plausible excuse for denying the benefits. (*Id.* at pp. 504-505.) The agents were held subject to liability for conspiracy to commit *actual* fraud since they had a duty to abstain from injuring the plaintiff through express misrepresentation, independent of the insurer's implied covenant of good faith and fair dealing. (*Id.* at p. 511.) But they were held not liable for *constructive* fraud since that charge rested on a fiduciary duty of disclosure which was owed plaintiff only by the insurer itself. (*Id.* at pp. 516-517; see *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 449-450 [208 Cal.Rptr. 511] ["any fiduciary duty existing between an insurer and its insured is governed by the terms of the insurance contract in effect between them"].)

Also outside the *Gruenberg-Wise* rule is the liability of corporate directors and officers who directly order, authorize or participate in the corporation's tortious conduct. Such persons may be held liable, as conspirators or otherwise, for violation of their own duties towards persons injured by the corporate tort. (See *Wyatt* v. *Union Mortgage Co., supra,* 24 Cal.3d 773, 785.) The *Gruenberg-Wise* rule, in contrast, precludes only claims against the principal's subordinate employees and against agents retained by the principal to act as independent contractors (see fn. 4, *ante*) for conspiring to violate a duty peculiar to the principal.

Finally, we anticipate that the impact of our holding, barring liability of employees or agents for conspiracy to cause their principal to violate a duty that is binding on the principal alone, will be relatively narrow where the violated duty is other than contractual. The duties imposed by section 790.03 are somewhat unusual in that their application is expressly restricted to "persons engaged in the business of insurance" (§ 790.01). The binding effect of many other statutory duties is not subject to such restriction. (See, e.g., Gov. Code, §§ 12940, subd. (f), 12955, subd. (g) [making it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts" forbidden by the Fair Employment and Housing Act]; Health & Saf. Code, §§ 25189, 25189.2 [imposing civil penalties on any person who "disposes or causes the disposal of any hazardous or extremely hazardous waste"].)

■ Accordingly, we conclude that the second count of the complaint, alleging a conspiracy between the insurer and the attorneys, as well as a conspiracy among the insurer, the attorneys, and Dr. Russell, to deprive plaintiff of the benefits of section 790.03(h)(5), fails to state a cause of action because the attorneys and Russell acted solely as the insurer's agents and did not personally share the statutory duty alleged to have been violated. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 576; *Wise* v. *Southern Pacific Co., supra,* 223 Cal.App.2d 50, 72.) The contrary holding of *Wolfrich Corp.* v. *United Services Automobile Assn., supra,* 149 Cal.App.3d 1206, is disapproved.

Let a peremptory writ of mandate issue, directing the respondent superior court to vacate its order overruling petitioners' demurrers to the second cause of action of the complaint, and to enter a new order sustaining the demurrers, consistent with this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kennard, J., concurred.