[No. A043231. First Dist., Div. Two. Apr. 27, 1990.]

DANIEL COOPER et al., Plaintiffs, v.
EQUITY GENERAL INSURANCE COMPANY, Cross-complainant and Appellant;
ROBERT A. SELIGSON, INC., et al., Cross-defendants and Respondents.

## COUNSEL

Robinson, Robinson & Phillips, Mark P. Robinson, John D. Rowell, Catten, Muchin & Zarvis and Michael F. Brandis for Cross-complainant and Appellant.

Goldstein, Barceloux & Goldstein, John J. Dacey, James M. Sitkin and Robert A. Seligson for Cross-defendants and Respondents.

## OPINION

BENSON, J.—Equity General Insurance Company (Equity) appeals from a judgment of dismissal after the trial court sustained demurrers to Equity's cross-complaint against respondents Robert A. Seligson, Inc. and Robert A. Seligson (collectively Seligson) and against respondent Goldstein, Barceloux & Goldstein (GB & G) without granting Equity leave to amend. Equity's sole contention on appeal is that it should have been granted leave to amend the cross-complaint. We affirm the judgment.

### STATEMENT OF THE CASE

Equity is an Illinois corporation in the insurance business. During 1980 and 1981, Equity provided professional liability coverage to Daniel Cooper

(Cooper), a San Francisco real estate broker, and to Allied American Properties (Allied), the real estate brokerage firm of which Cooper was president.

On January 29, 1981, Charles, Helga, Sidney, Marie, Robert, and Nancy Schonfeld (the Schonfelds) filed two lawsuits in San Mateo County Superior Court, naming Cooper and Allied as defendants. These suits were later consolidated. Respondent GB & G is the San Francisco law firm which represented Cooper and Allied in these actions.

In 1983, the Schonfelds entered into an agreement with Cooper and Allied. By the terms of this agreement, Cooper and Allied admitted the truth of the allegations in the Schonfeld complaints, and assigned to the Schonfelds any rights which Cooper and Allied might have had against Equity because of the policy. In exchange, the Schonfelds agreed not to execute against Cooper and Allied any judgment the Schonfelds might be awarded in the lawsuits. On June 3, 1983, after an uncontested trial at which the only issue was the amount of damages, the Schonfelds were awarded a judgment of $19,445,929.

In 1983, Equity filed a declaratory relief action in San Francisco Superior Court Case No. 808330, naming Allied, Cooper, and the Schonfelds as defendants. Equity's amended complaint in that case sought a declaration that it had had no duty to defend or indemnify Cooper and Allied in the Schonfeld actions. Equity also alleged that Allied, Cooper, and the Schonfelds had acted in collusion to inflate the judgment in the Schonfeld actions far in excess of the real value of the claim. Thus, appellant claimed that the judgment had been fraudulently obtained and that appellant should not be liable under the policy.

An order specifying issues without substantial controversy was entered on November 15, 1985, and a partial adjudication of some of the issues in the case was filed on September 9, 1987. After a trial, partly before a jury and partly before the court, a judgment in Equity's declaratory relief action was filed on July 12, 1989. Both Equity and the Schonfelds appealed from the judgment.

Meanwhile, on September 4, 1987, Cooper and Allied began the present lawsuit by filing a complaint alleging Equity had breached its duty of good faith and fair dealing in its handling of the Schonfeld actions. Specifically, Cooper and Allied claimed Equity had refused to defend the actions, failed to investigate the claim, and refused to indemnify them.

On March 9, 1988, Equity filed the amended cross-complaint which is before us, naming as cross-defendants not only Cooper and Allied, but also

GB & G, Seligson, and Ralph Golub, an attorney employed by GB & G, who had represented Cooper and Allied in the Schonfeld actions.

Respondents Seligson and GB & G demurred to the cross-complaint. On May 25, 1988, the trial court sustained the demurrers of both respondents without leave to amend. Accordingly, the court filed a judgment of dismissal in favor of cross-defendants GB & G and Seligson on Equity's amended cross-complaint.

On August 3, 1988, Equity filed a notice of appeal from the judgment in favor of cross-defendants GB & G and Seligson. On January 5, 1989, this court dismissed the appeal for lack of a timely filed notice of appeal. Equity petitioned the California Supreme Court for review, and on March 23, 1989, the Supreme Court transferred the matter to this court with directions to vacate our order of dismissal, reinstate the case, and consider it upon the merits.

On December 19, 1989, we granted Equity's motion that this court take judicial notice of further pleadings and records in the declaratory judgment action, including the final judgment and notices of appeal.

## STATEMENT OF FACTS

In the cross-complaint, Equity alleges that the Schonfelds entered into a conspiracy with Cooper and Allied. Other alleged conspirators were GB & G, as Cooper's and Allied's counsel, and Robert Seligson, another lawyer. ██ ██ ██ ██ Equity claimed that Seligson had been hired, on a contingent fee basis, to manipulate the litigation of the Schonfeld actions in such a way as to "set up" Equity so that Equity could be sued for breach of the covenant of good faith and fair dealing, and violation of Insurance Code section 790.03.[1] For his work with respect to the projected "bad faith" action, Seligson was to receive a fee contingent on its recovery. Equity alleged that this conspiracy violated Cooper and Allied's duty of good faith and fair dealing to their insurer.

According to Equity, the conspiracy resulted in the following acts: (1) Seligson redrafted the Schonfelds' complaints so as to trigger coverage

[1] *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] established a private right of action for violation of Insurance Code section 790.03. This right was removed by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] [third party claims], and *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833 [262 Cal.Rptr. 106] [first party claims], so that private parties may no longer sue an insurer for breach of this statutory duty. However, neither *Moradi-Shalal* nor *Zephyr Park* applies retroactively, (*Moradi-Shalal, supra,* 46 Cal.3d at p. 305; *Zephyr Park, supra,* 213 Cal.App.3d at p. 840.) so that claims such as this one, filed in reliance on *Royal Globe* and before *Moradi-Shalal* and *Zephyr Park,* are still viable.)

under the policy, and so the complaints demanded damages in the amount of the policy limit; (2) when the amended complaints were served on Cooper and Allied, the defense was tendered to Equity as if the parties were in an adversarial relationship, whereas in fact they had agreed not to litigate the merits of the case; (3) Equity was refused the opportunity to defend the actions, because, one day after the purported "tender," the parties to the suit reached an agreement whereby Cooper and Allied admitted liability and causation and assigned to the Schonfelds all the rights which Cooper and Allied had had against their insurer, Equity, in return for which the Schonfelds agreed not to execute on the judgment against Cooper or Allied directly; and (4) at the uncontested trial before a court commissioner on June 3, 1983, the Schonfelds were awarded a judgment in excess of $19 million.

Respondents GB & G and Seligson demurred to the cross-complaint on the following grounds: (1) neither respondent owed Equity a duty of good faith and fair dealing because neither respondent was a party to the insurance contract; (2) there was no legal basis for a recovery of damages in a "reverse bad faith" claim; (3) no proximate cause had been alleged in the cross-complaint; (4) the insureds, Cooper and Allied, owed Equity no duty of good faith and fair dealing after Equity had refused to defend the Schonfeld actions; (5) the cross-complaint was barred by the statute of limitations; and (6) the cross-complaint was a subterfuge to avoid the effect of the summary adjudications in Equity's declaratory judgment action.

In support of their demurrers, respondents GB & G and Seligson requested the court to take judicial notice of part of the record of Equity's declaratory judgment action, specifically the summary adjudication and the order specifying issues without substantial controversy.

Equity opposed all the grounds stated by GB & G and Seligson in support of their demurrers. In its opposition to the demurrers, Equity additionally contended that the statute of limitations had been tolled because the wrongful conduct of GB & G and Seligson had not been discovered until the deposition of attorney Golub on April 30, 1987.

### Discussion

*I. Liability for Conspiracy to Violate Insured's Duty of Good Faith and Fair Dealing*

Respondents assert that they cannot be liable as a matter of law because they owed no legal duty of good faith and fair dealing to Equity.

Parties to an insurance contract are subject to a legally implied duty to act in good faith and deal fairly with one another. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032].) Breach of this obligation will give rise to tort liability. (*Ibid.*) Those who are not parties to the contract, but who act merely as agents of the parties, are not subject to this legal duty, and thus not liable for conspiracy to violate the duty. (*Id.* at p. 576 [holding that the insurer's attorneys and adjusters were not liable on a conspiracy theory].) Thus, an attorney acting solely as an agent of an insured cannot be liable for conspiracy to violate the duty of good faith and fair dealing.

At the time of the filing of cross-complaint and the demurrers, Equity claimed that GB & G and Seligson could be liable for conspiracy to violate their clients' duty of good faith and fair dealing because of the holding in *Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446].[2] Here, Equity has alleged that Cooper and Allied owed Equity a duty of good faith and fair dealing "pursuant to the [insurance] contract." Thus, *Wolfrich* never was relevant to our case. Moreover, in *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 46 [260 Cal.Rptr. 183, 775 P.2d 508], the California Supreme Court overruled *Wolfrich* and reaffirmed the *Gruenberg* rule, that an attorney acting solely as an agent for a client could not be liable for conspiracy to violate the client's duty of good faith and fair dealing. Nevertheless, in dicta, the court said that there were "other" circumstances under which attorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy. (*Doctors' Co., supra*, 49 Cal.3d at p. 46.) While not defining all "other" circumstances, the Supreme Court gave two examples, both of which, according to Equity, are relevant here. As one example, the Supreme Court said that an attorney may yet be liable for tortiously conspiring to violate a duty peculiar to his client if the attorney were not solely acting as an agent of the client, but also "in furtherance of the attorney's own financial gain." (*Doctors' Co., supra*, 49 Cal.3d at p. 46.) Secondly, the court said that an attorney may be liable if in the course of a conspiracy, the attorney were to violate the attorney's own duty to a party. (*Doctors' Co., supra* 49 Cal.3d at p. 47.)

As an example of a case where attorneys acted in furtherance of their own financial gain, the Supreme Court cited *Black* v. *Sullivan* (1975) 48 Cal.App.3d 557 [122 Cal.Rptr. 119]. (*Doctors' Co.* v. *Superior Court, supra,*

---

[2] *Wolfrich* created an exception to the *Gruenberg* rule; it held that an attorney acting as an agent for a client may nevertheless be liable for conspiracy to violate the client's duty of good faith and fair dealing where that duty was statutory (such as that created by Insurance Code section 790.03, subdivision (h)) rather than contractual. (*Wolfrich Corp.* v. *United Services Automobile Assn., supra*, 149 Cal.App.3d at p. 1210.)

49 Cal.3d at p. 46.) In *Black,* defendants had sold some real estate and taken a promissory note as part payment. The note was secured by a deed of trust on the property. Defendants had assigned their beneficial interest in the deed of trust to their attorneys as payment for legal fees. (*Black, supra,* 48 Cal.App.3d at pp. 560-561.) Plaintiffs, the current owners, had assumed the note when they bought the house. Plaintiffs were now engaged in selling the property, but defendants wilfully refused to comply with Civil Code section 2943, which requires the beneficiary of a deed of trust to supply information about the balance of the unpaid debt. As a result, the impending sale fell through. (*Black, supra,* at p. 568.)

The court in *Black* found that although defendants' attorneys had owed no duty to provide the information about the debt, yet the attorneys could be liable to plaintiffs for conspiring with defendants to violate defendants' statutory duty. (*Black* v. *Sullivan, supra,* 48 Cal.App.3d at p. 567.) The Supreme Court reasoned that in such a situation, where the attorneys were assignees of the beneficial interest in the deed of trust, then they were not merely agents of defendants but were also acting in furtherance of their own financial interests, and should be liable for conspiracy to violate defendants' duty. (*Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 46.)

Equity argues that respondent Seligson, by contracting to take a contingent fee in the anticipated "bad faith" litigation, was, like the attorneys in *Black*, acting in furtherance of his own financial gain. We do not accept that proposition.

■ A contingent fee contract does not transfer to the attorney any rights to the client's cause of action, but rather gives the attorney a lien on the client's prospective recovery. (*Isrin* v. *Superior Court* (1965) 63 Cal.2d 153, 159 [45 Cal.Rptr. 320, 403 P.2d 728].) Because the client can fire the attorney at any time, and because the attorney has no enforceable rights of his own in the action, the attorney whose fee is contingent on the success of his client's lawsuit is merely an agent of the client. (*Ibid.*)

The attorneys in *Black* had a beneficial interest in the deed of trust which was the subject of the litigation. (*Black* v. *Sullivan, supra,* 48 Cal.App.3d at p. 567.) Their financial gain was from the enhancement of their property interest, not from fees generated by their work as agents of their clients. In contrast, Equity has not alleged that Seligson stood to gain anything more than a fee for his work as an attorney. It has been said that "[t]o hold that a contingent fee contract . . . gives the attorney the beneficial rights of a real party in interest, with the concomitant personal responsibility . . . would be to demean his profession and distort the purpose of the various acceptable methods of securing his fee." (*Isrin* v. *Superior Court, supra,* 63 Cal.2d

at p. 161.) ■ We agree, and consequently conclude that, whereas Seligson stood to gain from the success of the lawsuit, he was still an agent of his clients, and was not acting as an individual in the furtherance of his own interests as were the attorneys in *Black*. As an agent, he cannot be liable for conspiracy to violate his clients' duty of good faith and fair dealing as a matter of law. (See *Gruenberg* v. *Aetna Ins. Co., supra*, 9 Cal.3d at p. 573.)

In contrast, Equity's cross-complaint does not allege that respondent GB & G acted in any capacity other than as agents of Cooper and Allied. Indeed, the only such assertion is to be found on page 20 of their opening brief, where Equity claims that "[a]lthough not expressly alleged in the cross-complaint, GB & G also stood to secure personal financial gain as a result of the conspiracy."

However, in *Doctors'*, the Supreme Court identified another exception to the general rule of nonliability of agent-attorneys: that is, where there is a claim "against an attorney for conspiring with his or her client to cause injury by violating the attorney's own duty to the plaintiff." (*Doctors' Co.* v. *Superior Court, supra*, 49 Cal.3d at p. 47.) Equity contends that its cross-complaint against respondent GB & G falls into this category of exceptions, and that GB & G may thus be liable on a conspiracy theory. We disagree.

In illustration of this type of situation, the Supreme Court cited *Barney* v. *Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966 [230 Cal.Rptr. 215]. The attorneys in *Barney* had been hired by the insurer to represent the insured against a third party. The attorneys settled the claim against the interest of the insured, and without informing the insured of the settlement, thus violating the attorneys' fiduciary obligation to their client. (*Id.* at p. 982.) The court concluded that the insured could state a cause of action against the attorneys for conspiracy to violate the insurer's duty of good faith and fair dealing because the attorneys had violated their own fiduciary duty to the insured. (*Ibid.*)

In the present case, respondent GB & G's fiduciary duty was to Cooper and Allied, not Equity. In the current climate of insurance litigation, legal counsel for an insured would have to be naive indeed to deal with the insurer at anything other than arm's length. The relationship between respondent attorneys and Equity was, of necessity, more one of respectful wariness than fiduciary duty. Although, as Equity points out, Business and Professions Code section 6128 prohibits attorneys from engaging in conduct "with intent to deceive . . . any party . . . ," we cannot compare that statutory obligation not to defraud parties to a lawsuit with the fiduciary duty of care that the attorney in *Barney* owed to his client, the insured.

Therefore, we conclude that because Equity has not alleged, nor has claimed to be able to allege, facts that would bring Seligson or GB & G under either of the exceptions to the *Gruenberg* rule illustrated by *Doctors'*, respondents are immune from liability for conspiracy to violate the insured's duty of good faith and fair dealing as a matter of law, and the demurrers to this cause of action were properly sustained without leave to amend. (See *Routh* v. *Quinn* (1942) 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215].)

Because we reach this conclusion, we need not discuss respondents' other arguments in support of the trial court's ruling.

*II.   Liability for Conspiracy to Commit Fraud*

■   Equity also contends that it should have been allowed to amend its cross-complaint against respondents GB & G and Seligson because it "attempted to allege a conspiracy to commit fraud . . . ." We disagree.

■   The elements of the tort of fraudulent misrepresentation are: (1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damages (causation). (*Younan* v. *Equifax Inc.* (1980) 111 Cal. App.3d 498, 512 [169 Cal.Rptr. 478]; Civ. Code, § 1709.) (7)   Moreover, in California, every element of a cause of action for fraud must be alleged both factually and specifically, and the policy of liberal construction of pleadings will not be invoked to sustain a defective complaint. (*Hall* v. *Department of Adoptions* (1975) 47 Cal.App.3d 898, 904 [121 Cal.Rptr. 223].)

■   The caption to Equity's cross-complaint does not identify what cause of action Equity seeks to allege. The text of the cross-complaint contains no reference to a specific tort or cause of action, let alone a statement that this is a claim for conspiracy to commit fraud. There is no reference to the California fraud statute. Rather, there is a list of 17 "general allegations," none of which specifically identify themselves as elements of a claim for deceit. The words "fraud," "deceit," or "misrepresentation" do not appear in the cross-complaint.

The most that Equity has done is to allege, without specifying how these facts relate to the elements of a fraud claim, the following facts: (1) that the conspirators represented to Equity that the parties in the Schonfeld actions were in an adversarial relationship; (2) that this was false because in fact the parties were collaborating; (3) that the conspirators had intended to injure Equity by making it liable for a judgment far in excess of the policy limit; (4) that Equity relied on these misrepresentations to the extent of seeking

coverage opinions and "attempting to commence" [*sic*] an investigation; (5) that the conspirators refused to allow Equity to defend the Schonfeld actions; and (6) that as a result of the conspiracy, Equity was damaged.

In essence, then, Equity claims that the conspirators' misrepresentation caused it to consult coverage counsel and start an investigation. Equity has not stated how such inquiries were caused by the misrepresentation rather than being a normal part of an insurer's responsibility when a defense is tendered. More significantly, Equity has not specifically alleged how the misrepresentations or any other acts of the conspirators caused Equity to be damaged.

Thus, not only does the cross-complaint fail to state a claim for fraud with specificity, it also lacks sufficient facts to constitute such a claim, even if it were construed liberally. Nevertheless, Equity has claimed to be able to amend the cross-complaint by adding allegations sufficiently specific to constitute a claim for fraud.

█ Leave to amend should be denied if the undisputed facts give rise to no liability as a matter of law. (*Routh* v. *Quinn, supra*, 20 Cal.2d at p. 493.) On the other hand, if there were any reasonable possibility that the complainant could state a cause of action, such as by supplying additional allegations, it would be error to deny leave to amend. (*Silberg* v. *Anderson* (1988) 216 Cal.App.3d 481, 490 [249 Cal.Rptr. 697].) The complainant, however, has the burden of showing how he can amend the pleading and how that amendment will change the legal effect of the pleading. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

In *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627 [75 Cal.Rptr. 766, 451 P.2d 406], plaintiff's complaint failed to allege sufficient facts to state a cause of action for fraud. (*Id.* at p. 636.) The trial court sustained a demurrer to the complaint without leave to amend, and the California Supreme Court upheld the order of dismissal, stating that "appellant has never advanced, either in the trial court or before us, any effective allegation which he could now make if further amendment were to be permitted. Although he insinuates multiple wrongs by respondents, he never points out in what manner those insinuations could be combined to state a cause of action." (*Id.* at pp. 636-637.) Similarly, in *Goodman* v. *Kennedy, supra*, 18 Cal.3d 335, plaintiff's cause of action for fraud was deficient in that it did not specify that plaintiff's reliance on the alleged representation was reasonable. (*Goodman, supra*, at p. 348.) The trial court sustained a demurrer to the complaint without leave to amend, and the Court of Appeal upheld the

decision on the ground plaintiff had not offered to allege additional facts necessary to constitute a cause of action. (*Goodman, supra,* at p. 349.)

In our case, the only additional facts that Equity has claimed to be able to allege are details gleaned from the deposition of Golub, which Equity wants to add so as to attack respondents' statute of limitations defense. Neither in its opposition to the demurrers, nor at oral argument in the trial court, nor in its briefs on appeal, has Equity pointed to any other facts that would illustrate how Equity could amend the pleading and how the proposed amendment would change the legal effect of the pleading. (*Cf. Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 349.) Equity's only gesture towards stating a fraud claim is counsel's statement at oral argument on the demurrers, that "I believe, after reading the complaint, . . . it is susceptible [*sic*] of a second tort; namely, conspiracy to commit fraud," and that Equity would like leave to amend to state that cause of action. Clearly, Equity has not shown *how* it can amend. To allow a party to amend a defective pleading, merely because the party makes a vague and conclusory assertion that it could state an entirely new cause of action for fraud if it were permitted to amend, would make the demurrer meaningless. We conclude that the trial court correctly sustained the demurrers without leave to amend.

## CONCLUSION

For the foregoing reasons, we affirm the judgment.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied May 29, 1990, and the opinion was modified to read as printed above.