Filed 4/11/22  Dynastion Energy v. Yung CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DYNASTION ENERGY, S.R.O., | B311960 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. 20STCV37438) |
| JOHN YUNG et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael L. Stern, Judge. Reversed.

Law Office of Louis E. Shoch, Louis E. Shoch, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard and Smith, John S. Poulos and John Ternieden for Defendants and Respondents.

Dynastion Energy, S.R.O. (Dynastion) appeals from an order sustaining, without leave to amend, the demurrer of defendants Lewis, Brisbois, Bisgaard & Smith (Lewis, Brisbois) and John P. Yung (Yung), a Lewis, Brisbois partner, to Dynastion's complaint for aiding and abetting fraud. The complaint alleged Dynastion invested in a joint venture with Yung's client. Dynastion also alleged Yung knew his client had failed to perform its obligations in a previous joint venture involving the same business enterprise, but Yung failed to disclose this information to Dynastion. In sustaining the demurrer, the trial court held the agent's immunity rule, under which duly acting agents cannot be held liable for conspiring with their own principals, barred Dynastion's claim. We reverse, concluding that an exception to the rule applies where, as here, the complaint alleges the attorney was aware of the client's previous failure to perform in a similar joint venture.

**FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

### A.     Formation of the HoldCo Joint Venture and Misappropriation of its Assets

The complaint contained the following allegations relating to the formation of the HoldCo joint venture, misappropriation of HoldCo assets, Yung's involvement in a previous ill-fated joint venture, and Yung's (and his firm's) knowledge of and/or participation in alleged fraud and other wrongdoing.

Dynastion is a limited liability company formed in the Slovak Republic. In late 2016, representatives of Dynastion were introduced to Ray Brewer (Brewer), the owner and operator of CH4 Power, Inc. ("PowerCo") in Tulare, California. Dynastion

2

discussed with Brewer a potential business relationship involving Brewer's "anaerobic digesters," (digesters) which were systems to convert dairy cow manure into electricity.

Brewer told Dynastion that PowerCo had the necessary relationships with dairy farmers, as well as the intellectual property, to build the digesters in California, as well as across North America. Brewer pitched a joint venture to Dynastion involving a multi-million-dollar investment from Dynastion.

Yung and Lewis, Brisbois had previously represented Brewer. With Yung's assistance, Brewer formed an entity, CH4 Green Energy Co. ("Green Energy") for the purposes of forming the joint venture with Dynastion. Pursuant to the Joint Venture, the parties agreed to form a holding company to own and operate the joint venture. Green Energy and Dynastion would each have a 50 percent interest in the joint venture holding company ("HoldCo"). Yung retained a profit participation interest in Green Energy.

During the formation of HoldCo, Yung participated in various meetings during which Brewer misrepresented his intent to transfer assets to HoldCo and overstated the value of the assets. Yung knew that Brewer was mispresenting the facts, yet Yung affirmed Brewer's statements and Yung made his own misrepresentations and failed to disclose material facts.

Yung and Lewis, Brisbois provided HoldCo with legal representation. HoldCo executed a conflict waiver to enable Lewis, Brisbois to represent HoldCo in addition to the joint venturer Green Energy.

The joint venture between Green Energy and Dynastion was the subject of two agreements, the Joint Venture Agreement (December 5, 2017) and the Amended and Restated Joint Venture Agreement (February 23, 2018), which replaced the Joint Venture Agreement.

Dynastion funded HoldCo with an initial contribution in excess of $2 million. Under the Joint Venture Agreement, Green Energy and Brewer were to contribute PowerCo's intellectual property and other project resources to HoldCo at fair value, and Green Energy would be responsible for developing, constructing and managing the digesters. There were 14 specific digester projects, known as California Dairy Energy projects, or "CDEs," that PowerCo would contribute. The CDEs included intellectual property, engineering and site drawings, contracts, land leases and fuel supply agreements for each CDE.

PowerCo and HoldCo executed a Bill of Sale pursuant to which HoldCo paid $2.1 million for various assets, including intellectual property rights and work product for specified CDEs. Yung and Lewis, Brisbois drafted the Bill of Sale. After Dynastion transferred the funds, Brewer and PowerCo failed to cause the transfer of their interest in the assets it had agreed to transfer under the Joint Venture Agreement. Furthermore, Brewer and PowerCo had overstated the value of the assets to be transferred.

Brewer misappropriated Dynastion's contributions to HoldCo, instead using the funds for his own interest and the interest of other entities under his control.

B.    **The Previous Joint Venture.**

Unbeknownst to Dynastion, at the time of the formation of the HoldCo joint venture, Brewer and Yung had been involved in a previous joint venture with another party. In April 2013, Brewer had created CH4 Bioenergy Holdings ("BioEnergy"), a limited liability company. The holders of BioEnergy were Brewer (51.3 percent), Yung (two percent), and four other individuals (46.7 precent).

Like HoldCo, BioEnergy was formed to construct and operate digesters on dairy farms in the Central Valley. Brewer told the investors in the joint venture that he and PowerCo were contributing intellectual property that Brewer had spent more than $1 million developing, and that Brewer already had 43 letters of intent from California dairy farmers to provide land and dairy waste necessary for the construction and operation of the digesters, and that Brewer had regulatory approvals and building permits necessary to begin construction.

However, in August 2013 one of the investors in BioEnergy accused Brewer of misconduct, including misrepresentations regarding the status of BioEnergy's business, its projects and building permits, and alleged that Brewer misappropriated funds and concealed his misrepresentations. The investor alleged that Brewer had forged many of the 43 letters of intent. In September 2013, it became clear that BioEnergy would not move forward. Yung terminated his representation of BioEnergy at this time, and rescinded his interest in the company.

Dynastion and HoldCo learned of BioEnergy holdings and its business history, as well as Yung's involvement, in October 2019, *i.e.*, after Dynastion had invested in HoldCo.

## C.   CDE 173

CDE 173 was one of the 14 CDE projects which were meant to be transferred to HoldCo. and was representative of Brewer's misuse of funds and misrepresentations. CDE 173 was a CDE project to be contributed to HoldCo that was located on a dairy farm owned and operated by Simon Vander Woude.

Before the Joint Venture, PowerCo had entered into a fuel supply agreement with Vander Woude governing PowerCo's right to construct and operate CDE 173 on Vander Woude's dairy farm. These rights were supposed to be transferred to HoldCo.

However, shortly before Dynastion transferred the funds to HoldCo, Brewer learned that Vander Woude had cancelled the fuel supply agreement with CDE 173, pursuant to written notice dated December 20, 2017. The reason for the cancellation was PowerCo's failure to break ground on the project.

At the time of the execution of the Joint Venture Agreements and the Bill of Sale, Yung knew of Vander Woude's cancellation and thus that CDE 173's value was overstated.

In July 2018, Yung and another partner at Lewis, Brisbois had a series of communications with Brewer concerning initiating litigation against Vander Woude for cancelling the fuel agreement with CDE 173. Although HoldCo had paid for the rights to CDE 173, including the fuel supply agreement, Yung never discussed any lawsuit with anyone other than Brewer, and HoldCo continued to be unaware of the cancellation.

In preparation for a lawsuit against Vander Woude, Brewer used $10,000 from HoldCo to pay a retainer to Yung and Lewis, Brisbois. No disinterested member of HoldCo was aware of this

payment. Yung and Brewer initiated a lawsuit on behalf of PowerCo, although the rights to the fuel supply agreement had been transferred to HoldCo.

This unauthorized lawsuit jeopardized HoldCo's relationship with dairy farmers, which relationship was critical to its operations.

Yung and Lewis, Brisbois were aware that Brewer was breaching his fiduciary obligations to HoldCo and misstating the value of assets and the status of various projects, but did not reveal that information to Dynastion or HoldCo.

### D. Complaint.

Dynastion and HoldCo's complaint alleged four causes of action: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) breach of fiduciary duty; and (4) legal malpractice. Dynastion was a party solely to the first cause of action, while HoldCo was the sole plaintiff asserting the second, third and fourth causes of action.

With respect to the first cause of action, the complaint alleged that Yung and Lewis, Brisbois aided and abetted Brewer's fraud. Yung and Lewis, Brisbois were aware that Dynastion was ignorant of the previous joint venture and its demise. Yung knew that in order to induce Dynastion to fund the new joint venture, Brewer had intentionally failed to disclose the existence of the prior joint venture and the reasons for its demise.

In reliance on the material omissions regarding the prior joint venture, Dynastion executed the joint venture agreements and funded HoldCo's operations with $2 million. With knowledge

of Brewer's fraud, Yung participated in drafting the Joint Venture Agreement and Amended Joint Venture Agreement.

It was not until September or October 2019 that Dynastion became aware of the earlier joint venture, including Yung's participation, the demise of that joint venture, and the allegations of fraud and misappropriation.

### E. Demurrer To Complaint.

Defendants Yung and Lewis, Brisbois demurred to the first and second causes of action for aiding and abetting based upon the agent's immunity rule, and asserted that the complaint failed to join Brewer, an indispensable party. Defendants did not demur on the basis of Civil Code section 1714.10, which imposes a prefiling requirement for actions against attorneys for conspiring with their client. Dynastion had not sought leave to file its complaint in advance of filing.

Plaintiffs Dynastion and HoldCo opposed the demurrer. They conceded, as Dynastion does on appeal, that the agent's immunity rule precludes claims against an attorney for conspiracy to breach a client's duty to a third party, unless the attorney also breaches an independent duty to that party. But, they contended, it does not apply to a claim the attorney aided and abetted the client's fraud. Further, even if the rule did apply, the "independent duty" exception would permit plaintiffs' claim. Finally, plaintiffs asserted they were not required to join Brewer because it is not necessary to join all tortfeasors to the action.

The trial court sustained the demurrer to the first and second causes of action, holding that plaintiffs failed to meet the prefiling requirements of Civil Code section 1714.10, subdivision

8

(a) and further the two aiding and abetting claims were based on alleged wrongdoing done in the attorney's representative capacity and failed as a matter of law under the agent's immunity rule. The trial court did not address defendants' indispensable party argument.

## DISCUSSION

Dynastion[1] argues that its claim is not subject to the prefiling order requirement of section 1714.10, subdivision (a), nor does the agent's immunity rule bar its claim because the "independent duty" exception applied.[2] Yung and Lewis, Brisbois contend that the trial court correctly ruled that Dynastion's claim was subject to the prefiling requirements of section 1714.10 and defendants did not owe an independent duty to Dynastion.

---

[1] Although the third and fourth causes of action were not the subject of the demurrer, the judgment is final as to Dynastion because the demurrer disposed of the first cause of action, the only cause of action to which it was a party. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 759.)

[2] Arguably, defendants' failure to assert section 1714.10 at the demurrer stage waived this procedural defense. The express language of section 1714.10, subdivision (b) requires that the defense be raised in the attorney's "first appearance" in the case. (*Farmers & Merchants Trust Co. v. Vanetik* (2019) 33 Cal.App.5th 638, 655.) However, the trial court nevertheless concluded the prefiling requirement was not met and substantively applied section 1714.10 as a bar to Dynastion's claims by concluding they fell within the agent's immunity rule. In any event, as discussed below, the allegations of the complaint fit within one of the statutory exceptions to the prefiling requirement.

### A. Standard of Review.

On appeal from an order sustaining a demurrer without leave to amend, we apply a de novo standard of review. We exercise our independent judgment to determine whether the complaint states a cause of action as a matter of law. (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016.) In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.) We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling. (*Summers v. Colette* (2019) 34 Cal.App.5th 361, 367.) When a trial court sustains a demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. The plaintiff has the burden of proving that an amendment would cure the defect. (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 155.)

"We review the trial court's interpretation of section 1714.10 under the de novo standard." (*Central Concrete Supply Co. v. Bursak* (2010) 182 Cal.App.4th 1092, 1098.) "Applying section 1714.10 . . . requires the court to initially determine whether the pleading falls . . . within the coverage of the statute." (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 818.) "Once it is determined that the pleading falls within the coverage of subdivision (a) of section 1714.10, the next step is to ascertain whether the pleaded claims fall within either of the exceptions set forth in subdivision (c) of the statute." (*Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327, 331.)

### B. Discussion.

#### 1. *Conspiracy and the Agent's Immunity Rule.*

Civil conspiracy imposes liability on persons who, while not actually committing the underlying tort, share with the tortfeasors a common plan or design and its perpetration. (*Berg & Berg, supra*, 131 Cal.App.4th at p. 823.) However, a civil conspiracy does not give rise to a cause of action unless there has been an independent civil wrong, and is thus not an independent substantive basis for liability. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062.) As explained in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, (*Doctors' Co.*), "'[t]he elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design . . .'" (*Id.* at p. 44.)

Civil liability for aiding and abetting may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. (*Stueve v. Berger Kahn, supra,* 222 Cal.App.4th at p. 323.) Aiding-abetting focuses on whether a defendant knowingly gave substantial assistance to someone who performed wrongful conduct, while conspiracy focuses on whether the defendant agreed to join the wrongful conduct. (*Ibid.*)

Under the agent's immunity rule, an agent cannot be liable for conspiring with its principal based upon the agent's conduct undertaken in an official capacity on behalf of the principal.

11

(*Doctors' Co., supra,* at p. 41; *Berg & Berg, supra,* 131 Cal.App.4th at p. 817.)

Both civil conspiracy and aiding and abetting are subject to the agent's immunity rule. (*Berg & Berg, supra,* 131 Cal.App.4th at p. 823, fn.10; *Howard v. Superior Court* (1992) 2 Cal.App.4th 745, 749.) The rule applies "without regard to the labels attached to the cause of action or whether the word "conspiracy"—having no talismanic significance—appears." (*Cortese v. Sherwood* (2018) 26 Cal.App.5th 445, 455.)

### 2. *Section 1714.10 and the Agent's Immunity Rule.*

Civil Code section 1714.10 is co-extensive with the agent's immunity rule. However, as originally enacted, it also operated as a gatekeeper to actions against an attorney for conspiracy, requiring persons seeking to assert a claim for conspiracy against an attorney in connection with the attorney's actions to compromise a claim or dispute to obtain a court order prior to filing a complaint. (Civ. Code § 1714.10, subd. (a); *Berg & Berg, supra,* 131 Cal.App.4th at p. 817–818.) A party must establish a reasonable probability of prevailing before pursuing a "cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute." (Civ. Code § 1714.10, subd. (a).)[3]

---

[3] Civil Code section 1714.10, subdivision (a) provides at relevant part, "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy

12

Originally enacted in 1988, Civil Code "'[s]ection 1714.10 was intended to weed out the harassing claim of conspiracy that is so lacking in reasonable foundation as to verge on the frivolous.'" (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1148.) However, later amendments to section 1714.10 set forth exceptions: "[t]his section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an *independent legal duty* to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy *to violate a legal duty in furtherance of the attorney's financial gain*." (Civ. Code § 1714.10, subd. (c), (emphasis added).) The exceptions mirror the limits on an attorney's liability for conspiracy established by *Doctors' Co., supra,* 49 Cal.3d 39. (*Cortese v. Sherwood, supra,* 26 Cal.App.5th at p. 453.)

Several courts have observed that the exceptions swallow the rule because they capture all viable attorney-client conspiracy claims; as a result, only those claims that would fail in any event remain subject to the pleading hurdle in subdivision (a). (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 394–395 (*Pavicich*).) In effect, "a plaintiff who can plead a viable claim for conspiracy against an attorney need not follow the petition procedure outlined in the statute as such a claim necessarily falls within the stated exceptions to its application." (*Berg, supra,* 131 Cal.App.4th at p. 818.)

---

to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action."

### *3      The First Exception Applies*

The first exception in Civil Code section 1714.10, subdivision (c), applies where an attorney owes an "independent legal duty" to the plaintiff. This exception applies to "a relationship beyond that of attorney-client." (*Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 605.) Attorneys are expected to stay within the bounds of the law in representing their clients. "Counsel who circumvent established legal channels to accomplish a desired result, participating with the client in a scheme" to deprive another of their property are "not performing the normal services of an attorney." (*Rickley v. Goodfriend, supra,* 212 Cal.App.4th at p. 1154.)

Thus, "an attorney has an independent legal duty to refrain from defrauding nonclients." (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1351 (*Klotz*); accord, *Rickley v. Goodfriend, supra*, 212 Cal.App.4th at p. 1151; see *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 71.) "[A] lawyer communicating on behalf of a client with a nonclient may not knowingly make a false statement of material fact to the nonclient [citation], and may be liable to the nonclient for fraudulent statements made during business negotiations." (*Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291.)

In *Pavicich v. Santucci, supra,* 85 Cal.App.4th 382, the plaintiff was persuaded to invest as a limited partner in a struggling brew pub project. (*Id.* at p. 386.) However, a prior joint venture had been dissolved and after a settlement agreement and release were entered into, certain of the former joint venturers asserted that the release had been procured by fraud. (*Id.* at pp.

14

385–386.) During negotiations leading up to his investment, the plaintiff asked two of the people remaining in the project and the attorney whether there were circumstances surrounding the early days of the joint venture that the plaintiff should know about. (*Id*. at p. 386.) Although the attorney told the plaintiff there was a settlement, he did not disclose the allegations that the release had been procured by fraud. (*Ibid*.)

*Pavicich* concluded that the plaintiff stated a viable cause of action against the attorney for conspiring to defraud the plaintiff, reasoning that the case could not be decided in the attorney's favor under a theory that he had no duty of disclosure to the plaintiff. (*Pavicich, supra*, 85 Cal.App.4th at p. 398.) Rather, since the attorney had indicated to the plaintiff that the releases they had signed would prevent future problems with the project, the attorney was bound by "the principle that 'where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.] One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.' [Citations.]" (*Ibid*.)

*Pavicich* is on point here. Defendants are alleged to have previously represented Brewer in connection with the prior joint venture, and Yung took a percentage interest in it. After BioEnergy did not move forward, Yung terminated his representation and rescinded his ownership interest.

Defendants provided the current joint venture, HoldCo, with legal representation. Dynastion alleged that Yung participated in meetings regarding the formation of the current joint venture, during which Brewer made statements that Yung

15

knew were false. Yung also knew of Vander Woude's cancellation of the fuel supply contract, and the potential litigation against him on behalf of PowerCo, but did not disclose these facts to Dynastion.

Assuming the truth of plaintiff's allegations, given Yung's level of involvement with Brewer, the prior joint venture and its demise, as well as the cancellation of the Wander Woude contract, Yung had a duty to disclose Brewer's misrepresentations concerning the status of his property interests in the intellectual property and the CDEs, and Brewer's malfeasance with respect to funds. In sum, although Yung did not represent Dynastion, given the facts of this case, Yung and Lewis, Brisbois had an independent duty to Dynastion as the second investor in Brewer's "digester" enterprise, namely, the duty to "refrain from defrauding nonclients." (*Klotz, supra,* 238 Cal.App.4th at p. 1351.) Because Dynastion's claims come under the exception of Civil Code section 1714.10, subdivision (c), no prefiling order was required to commence this action.

## DISPOSITION

The judgment of the superior court is reversed. Dynastion is to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

WILLHITE, Acting P.J.

MICON, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.