Filed 1/19/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SPENCER S. BUSBY, APLC, | D078204 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00030629-CU-MC-CTL) |
| BACTES IMAGING SOLUTIONS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge. Affirmed.

Law Offices of Robert A. Waller, Jr., and Robert A. Waller; Williams Iagmin and Jon R. Williams on behalf of Plaintiff and Appellant.

Delmore Greene, Daniel W. Towson, and Cassandra F. Bolten on behalf of Defendant and Respondent.

I

INTRODUCTION

BACTES Imaging Solutions, LLC (BACTES) contracts with health care providers to respond to pre-litigation requests from attorneys seeking access

to their clients' medical records. After BACTES receives an attorney's request, BACTES identifies the responsive medical records, reviews the records and other documentation for regulatory compliance, and notifies the attorney about options by which she may inspect or obtain photocopies of the records. One option available to the attorney, among others, is to hire and pay BACTES to provide photocopies of the records.[1]

Spencer S. Busby, APLC (Busby) is the class representative for a class of 9,691 attorneys who hired BACTES to provide photocopies of their clients' medical records. Busby sued BACTES, claiming it charged photocopying rates exceeding the rates permitted by Evidence Code section 1158.[2] Section 1158 sets maximum rates health care providers may charge attorneys for pre-litigation photocopies of their clients' medical records.

After a bench trial, the trial court found BACTES acted as an agent of the health care providers when it responded to the attorneys' requests for medical records; however, it found BACTES acted as an agent of the requesting attorneys when it photocopied the medical records and provided them to the attorneys. Because BACTES did not act as an agent of the health care providers when it provided the photocopied records to the attorneys, the court found BACTES did not violate section 1158. The court entered judgment in favor of BACTES accordingly.

We agree with the trial court's reasoning and the outcome it reached in the proceedings below. Therefore, we affirm the judgment.

---

[1]     While this litigation was pending, BACTES was rebranded as Sharecare Health Data Services, LLC. For the sake of continuity, we will refer to the respondent as BACTES.

[2]     Further undesignated statutory references are to the Evidence Code.

2

## II

## BACKGROUND

## A

## *BACTES*

BACTES is a release of information (ROI) vendor that contracts with health care providers including medical practices and hospital networks. As an ROI vendor, BACTES assists health care providers in responding to requests for patient information, including requests from patients seeking their own medical records, requests from doctors seeking other doctors' treatment records, and—of relevance here—requests from attorneys seeking their clients' medical records in anticipation of potential litigation. Client medical records assist plaintiff-side attorneys in evaluating their clients' claims and pursuing early dispute resolution.

BACTES enters into two agreements with health care providers relating to ROI services—a service agreement and a HIPAA business associate agreement.[3] The service agreement requires BACTES to respond to requests for patient information on behalf of the health care providers. Importantly, it does not require BACTES to photocopy responsive records or provide photocopies of such records to the requesting parties. The HIPAA business associate agreement grants BACTES access to patients' medical records.

In the case of an attorney request for patient information, the attorney typically sends the request directly to the health care provider. The health care provider performs an initial screen to determine whether it treated the

---

[3]  For purposes of this appeal, HIPAA refers to the Federal Health Insurance Portability and Accountability Act of 1996 and related state laws governing the protection and disclosure of medical records.

attorney's client and, if so, whether medical records exist for the client. The health care provider then relays the attorney's request to BACTES.

Once BACTES receives the attorney's request, it reviews the request and any accompanying authorization allowing the patient's information to be released to the attorney. BACTES conducts this review to ensure the request is HIPAA-compliant and the release authorization is proper. If there are HIPAA or release authorization problems (e.g., if the name on the authorization does not match the name on the patient's records), BACTES may return the request to the health care provider or send a deficiency notice to the requesting attorney.

Assuming there are no HIPAA or release authorization problems, the health care provider either pulls the patient's paper records for BACTES or gives BACTES access to the patient's paper records. BACTES then scans the paper records into a digital format through a process known as abstracting. If the patient's medical records are already in electronic format, the health care provider grants BACTES access to the provider's electronic database so BACTES may transfer the records to BACTES's own electronic database. BACTES then conducts additional screening of the scanned information for quality control and HIPAA compliance. BACTES does not charge health care providers for any of these services.

BACTES then prints out the records that are responsive to the attorney's request and sends a fax cover sheet and an invoice to the attorney. The fax cover sheet states BACTES is in receipt of the attorney's request for information. It cites section 1158, and states the attorney has "several choices for obtaining [the] patient records, including retaining an outside copy service, visiting the [health care] provider … and inspecting the records during business hours, or retaining BACTES as [the attorney's] copy service."

4

If the attorney retains BACTES, she agrees to employ BACTES as her agent. The fees for BACTES to copy the patient's records are set forth in the invoice accompanying the fax cover sheet. BACTES's fees exceed the reasonable costs health care providers are allowed to charge attorneys for photocopies of patient records under section 1158.

If an attorney elects to retain BACTES for photocopying services, she pays the invoice and BACTES delivers the previously-printed patient records to the attorney. If the attorney elects not to retain BACTES for photocopying services, BACTES refers the attorney to the health care provider for further processing and BACTES absorbs the cost of the previously-printed patient records.

B

*The Present Lawsuit*

Busby is a professional law corporation specializing in personal injury lawsuits. For many years, Busby has sent requests for patient information and record release authorizations to health care providers. On several occasions, BACTES has responded to Busby by sending the fax cover sheets and invoices just discussed. Busby has paid BACTES's invoices and, in return, BACTES has sent copies of the requested patient records to Busby.

In 2014, Busby filed a putative class action against BACTES. Busby alleged BACTES violated section 1158, which requires a medical provider to make patient records available to an attorney for inspection and copying if the attorney presents the medical provider with a signed written authorization before the filing of an action or before the appearance of a defendant in an action. (§ 1158, subd. (b).) Section 1158 allows the medical provider to charge the attorney reasonable costs incurred in making the

5

records available, but it limits the amounts that may be charged as reasonable costs. (*Id.*, subd. (e).)

Busby alleged BACTES violated section 1158 by charging rates above the statute's reasonable cost limitations. Busby asserted a claim for violations of section 1158 and a derivative claim for violations of the unlawful prong of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200, et seq.).[4] The trial court certified a class of 9,691 attorneys and designated Busby as class representative.[5]

After a three-day bench trial, the court determined BACTES did not violate section 1158, and entered judgment in BACTES's favor. The court found BACTES acted as the agent of the health care providers when it responded to the attorneys' section 1158 requests. However, the court found BACTES acted as the agent of the attorneys when it photocopied the patient records and provided those photocopied records to the attorneys. Because the court found BACTES provided its photocopying services while acting as an agent of the attorneys—not the health care providers—the court concluded BACTES was not required to comply with the reasonable cost provisions of section 1158.

---

[4] The complaint alleged conversion and declaratory relief claims as well, but the court dismissed these claims at Busby's request.

[5] The court defined the class as follows: "Attorneys who, from September 11, 2010 to the present, prior to filing an action or the appearance of a defendant in an action, requested medical records from a medical provider located in California pursuant to written authorization, whereby BACTES IMAGING SOLUTIONS provided the medical records on behalf of the medical provider and charged copy fees in excess of the 'reasonable costs' specified in California Evidence Code § 1158."

# III

# DISCUSSION

## A

### *Section 1158*

Section 1158, subdivision (b) states as follows: "Before the filing of any action or the appearance of a defendant in an action, if an attorney at law or his or her representative presents a written authorization therefor signed by an adult patient, by the guardian or conservator of his or her person or estate, or, in the case of a minor, by a parent or guardian of the minor, or by the personal representative or an heir of a deceased patient, or a copy thereof, to a medical provider, the medical provider shall promptly make all of the patient's records under the medical provider's custody or control available for inspection and copying by the attorney at law or his or her representative."

Section 1158, subdivision (e)(1) permits health care providers to charge a requesting attorney reasonable costs incurred in making a patient's medical records available. However, section 1158, subdivision (e)(2) limits the maximum amounts a health care provider may charge. Those maximum amounts are as follows: "ten cents ($0.10) per page for standard reproduction of documents of a size 8 ½ by 14 inches or less… [and] reasonable clerical costs incurred in locating and making the records available to be billed at the maximum rate of sixteen dollars ($16) per hour per person, computed on the basis of four dollars ($4) per quarter hour or fraction thereof…." (§ 1158, subd. (e)(2).) The Legislature enacted the ten cent per page cost figure in 1978 (Stats. 1978, ch. 493, pp. 1625–1626, § 1), and the $16 per hour clerical cost figure in 1986 (Stats. 1986, ch. 603, § 5, p. 2075).

B

Thornburg v. Superior Court

In *Thornburg v. Superior Court* (2006) 138 Cal.App.4th 43 (*Thornburg*), this court considered whether, and under what circumstances, section 1158 applies to *agents* of health care providers. In that case, a patient, acting through her attorney, submitted requests to a hospital for the patient's treatment records. (*Id.* at p. 47.) BACTES responded on behalf of the hospital by providing copies of the patient's treatment records and charging her rates in excess of the reasonable cost limitations in section 1158. (*Ibid.*) The patient then sued BACTES for alleged violations of section 1158. (*Id.* at pp. 47–48.) The trial court sustained BACTES's demurrer in relevant part, finding that section 1158 does not apply to agents of health care providers and, in any event, the patient did not adequately plead a principal-agent relationship between the hospital and BACTES. (*Id.* at p. 48.)

Our court concluded the trial court erred in sustaining the demurrer. In reaching this determination, we rejected BACTES's claim that the reasonable cost limitations in section 1158 apply solely to health care providers and never to their agents or contractors. (*Thornburg, supra*, 138 Cal.App.4th at p. 51.) As we explained, BACTES's reading of the statute "would undermine the obvious purpose of the cost limitations" by requiring patients to pay copying charges in excess of the reasonable cost limitations, and either forego those limitations altogether or pursue a circuitous and burdensome remedy of trying to recoup from the health care provider the difference between the charged rates and the reasonable cost rates. (*Ibid.*)

However, our court rejected the patient's overly-broad construction of section 1158, which would have subjected every agent of a health care provider—including every employee and officer—to liability for violations of

8

the statute. (*Thornburg, supra*, 138 Cal.App.4th at p. 52.) We reasoned that "[w]hen agents and employees are acting in their official capacities on behalf of their principals and not as individuals for their own advantage, their acts are generally privileged and do not give rise to liability in tort or under statutes which impose duties on their principals." (*Ibid.*) As we explained, it is "difficult to believe that in the case of copying patient records the public interest is so vital that the Legislature intended to strip the employees of medical providers of the immunity from liability they otherwise enjoy." (*Ibid.*)

Rather than accepting either of the parties' interpretations, we adopted a middle-ground construction of section 1158. Based on existing case law "recogniz[ing] that an agent loses his or her protection when he is acting for his own benefit or advantage rather than solely on behalf of and at the direction of his or her principal," we concluded that agents acting on behalf of health care providers may be held liable for violations of section 1158, but only if two requirements are satisfied: "(1) they have assumed the duty of responding to section 1158 requests *and* (2) they are acting for their own advantage and benefit as well as the interests of entities expressly covered by the statute." (*Thornburg, supra*, 138 Cal.App.4th at pp. 52, 53.)

Applying this legal principle to the facts alleged in the complaint, we concluded the patient adequately pleaded that BACTES violated section 1158. (*Thornburg, supra*, 138 Cal.App.4th at pp. 53–54.) As we explained, the patient pleaded that BACTES assumed the duty of responding to section 1158 requests because she alleged that BACTES's contract with the hospital required BACTES to photocopy patients' medical records and to provide those photocopied records in response to section 1158 requests. (*Ibid.*) We determined the patient also pleaded that BACTES acted for its own

9

advantage and financial interests.  (*Id.* at p. 54.)  Based on these allegations, we concluded it was improper for the trial court to sustain BACTES's demurrer.  (*Id.* at p. 55.)

C

*Analysis*

1

Relying on *Thornburg*, Busby argues the trial court erred in finding that BACTES was not liable for violations of section 1158.  According to Busby, BACTES violated section 1158 because it charged rates above the reasonable cost limitations in section 1158, subdivision (e), and both *Thornburg* requirements were satisfied:  (1) BACTES "assumed the duty of responding to section 1158 requests," and (2) BACTES "act[ed] for [its] own advantage and benefit as well as the interests" of the health care providers. (*Thornburg, supra*, 138 Cal.App.4th at p. 53.)  We disagree with Busby's argument, which overlooks material differences between the present case and the facts that were alleged in *Thornburg*.

The *Thornburg* court impliedly assumed that every response to a section 1158 request would necessarily entail the production of photocopied patient records to the requesting attorney.  This implicit assumption was understandable since the *Thornburg* plaintiff alleged that BACTES's contracts with the hospital obligated BACTES to photocopy the hospital's patient records and produce the photocopied records to the requesting attorney.  (See *Thornburg, supra*, 138 Cal.App.4th at p. 46 ["Under the terms of the agreement … Bactes agreed to make copies of the records and provide the copies to the patient or his or her attorney."]; *id.* at p. 53 ["Under the agreement … Bactes [is] … responsible for making copies, delivering them to the requesting party and billing the requesting party."].)  Indeed, there is no

10

indication in *Thornburg* that a response to a section 1158 request could take any form other than the photocopying and production of patient records.

But, as BACTES correctly notes, and as Busby concedes, section 1158 does not require a health care provider to photocopy and produce patient records to a requesting attorney. Rather, it states that a health care provider, upon presentation of an appropriate section 1158 request, must "promptly make all of the patient's records under the medical provider's custody or control *available for inspection and copying by the attorney at law or his or her representative.*" (§ 1158, subd. (b), italics added.) Thus, a health care provider may satisfy section 1158 by making patient records available to a requesting attorney, without necessarily generating photocopies of the records and providing the photocopies to the attorney. (See *In re Gina S.* (2005) 133 Cal.App.4th 1074, 1082–1083 ["inspect" means " 'to view closely in critical appraisal,' " and is distinguishable from "copy"].)

The two-part test that the *Thornburg* court articulated for determining whether an agent or contractor of a health care provider can be held liable under section 1158 must be viewed in light of the court's implicit assumption that a response to a section 1158 request necessarily entails the photocopying and production of patient records. If we make this previously-implicit assumption explicit, the *Thornburg* decision is perhaps better understood as standing for the following proposition—an agent or contractor of a health care provider may be held liable under section 1158 if: (1) they have assumed the duty of responding to section 1158 requests *by generating photocopies of the requested patient records and providing those photocopied records to the requesting attorney*, and (2) they are acting for their own advantage and benefit as well as the interests of entities expressly covered by the statute.

11

With this framing in mind, it is clear the trial court correctly found BACTES did not violate section 1158. In factual findings that are unchallenged on appeal, the court found the agreements between BACTES and the health care providers merely required BACTES to respond to section 1158 requests, not to photocopy patient records or provide photocopies of such records to attorneys. BACTES fulfilled its contractual obligations by sending cover letters to attorneys notifying them that BACTES was in receipt of their section 1158 requests and that they had several ways to obtain their clients' records—including by visiting the health care providers and inspecting the records. The court found BACTES acted as the agent of the health care providers when it sent these responses to the attorneys.

The court also found BACTES offered each attorney an opportunity to enter into a separate principal-agent relationship with BACTES. It found that if the attorney accepted BACTES's offer, she hired BACTES to photocopy the requested records and transmit them to the attorney. As the court noted, section 1158 itself envisions that a requesting attorney may hire a photocopier to obtain her client's records. (See § 1158, subd. (c) [prohibiting a health care provider from copying medical records if an attorney "has employed a professional photocopier … as his or her representative to obtain or review the records on his or her behalf"].) Further, nothing in the contracts between BACTES and health care providers prohibited BACTES from entering into principal-agent arrangements with attorneys.

Importantly, the trial court found that BACTES photocopied and transmitted patient records to requesting attorneys *while acting as the*

*attorneys' agent.*[6] "The existence of an agency relationship is a factual question for the trier of fact whose determination must be affirmed on appeal if supported by substantial evidence." (*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 965.) Similarly, "[t]he question of whether an agent acted on behalf of a principal is a question of fact, and on appeal, we review the trial court's decision to determine whether there is substantial evidence, uncontradicted or contradicted, to support it." (*Seneca Ins. Co. v. County of Orange* (2004) 117 Cal.App.4th 611, 618.) Because Busby has not challenged the court's factual findings on appeal, we must assume the court was correct in finding that BACTES photocopied and transmitted patient records as the agent of the requesting attorneys, not as the agent of the health care providers.

Given these unchallenged factual findings, we cannot find fault with the trial court's legal analysis. In short, the contracts between BACTES and the health care providers did not envisage that BACTES would photocopy and transmit patient records to requesting attorneys. Thus, to the extent BACTES engaged in such acts, those acts fell outside the scope of the limited agency relationships that existed between BACTES (the agent) and the health care providers (the principals). In this respect, the facts that were proven at trial are materially different from the facts alleged in *Thornburg*.

By contrast, the agreements between BACTES and the attorneys provided that the attorneys were hiring BACTES for the express purpose of

---

[6] As the trial court explained, it is irrelevant BACTES performed "the lion's share of the work contemplated in the new contract" by abstracting and printing the patient records prior to the formation of the principal-agent relationship between BACTES and the requesting attorney. "An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification." (Civ. Code, § 2307.)

photocopying the requested patient records and providing those photocopied records to the attorneys.  Therefore, BACTES's practice of photocopying records and delivering them to the attorneys fell squarely within the scope of the defined agency relationships that existed between BACTES (the agent) and the attorneys (the principals).  Once more, these facts distinguish this case from *Thornburg*, where there were no allegations of a principal-agent relationship between the requesting attorney and BACTES.

Because BACTES indisputably acted on behalf of the requesting attorneys—not on behalf of the health care providers—when it photocopied the patient records and transmitted them to the attorneys, the trial court correctly found that BACTES did not violate section 1158.

2

Busby contends BACTES's practices are irreconcilable with the legislative goals of section 1158, in addition to being irreconcilable with the *Thornburg* decision.  Section 1158 does not include a statement of legislative purpose, "but its apparent goal is to permit a patient to evaluate the treatment he or she received before determining whether to bring an action against the medical provider.  Section 1158 also enables the patient to seek freely advice concerning the adequacy of medical care and to create a medical history file for the patient's information or subsequent use.  It operates to prevent a medical provider from maintaining secret notes which can be obtained by the patient only through litigation and potentially protracted discovery proceedings."  (*National Football League Management Council v. Superior Court* (1983) 138 Cal.App.3d 895, 903.)

These legislative goals are furthered, not undermined, by BACTES's practices.  By reviewing a patient's records and release authorization forms for regulatory compliance, compiling the patient's records in one location, and

14

advising the requesting attorney she may inspect her client's records at the health care facility or retain a copy service to make photocopies, BACTES ensures that the patient, through her attorney, receives access to her own medical files. BACTES does not compel the attorney to retain BACTES or pay for its photocopying services; the attorney can inspect the medical files personally or through a representative without paying any photocopying costs at all. Alternatively, she can retain a third-party photocopier that may charge lower photocopying rates than BACTES. Regardless of which option the attorney selects, the attorney is given access to the medical files necessary for the attorney and her client to make an informed decision regarding the costs and benefits of proceeding with litigation.

3

Finally, Busby argues the agency contracts between BACTES and the requesting attorneys are unenforceable because they violate Civil Code section 1668. That statute provides as follows: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.) "Ordinarily, the statute invalidates contracts that purport to exempt an individual or entity from liability for future intentional wrongs [citation] and gross negligence [citation]. Furthermore, the statute prohibits contractual releases of future liability for ordinary negligence when 'the "public interest" is involved or ... a statute expressly forbids it.' " (*Frittelli, Inc. v. 350 North Cannon Drive, LP* (2011) 202 Cal.App.4th 35, 43.)

We have difficulty comprehending the relevance of Busby's argument. As best we can discern, Busby has never asserted that BACTES's practice of entering into unenforceable agency contracts with requesting attorneys itself

15

violates the UCL. Thus, even if we were to agree with Busby that the agency contracts were invalid, that fact alone would not establish a UCL violation under the theories of liability asserted by Busby.

To be sure, the agency contracts were used as evidence in the trial court to establish the existence of an agency relationship between BACTES and the requesting attorneys. However, as previously noted, Busby has expressly disavowed any intention of challenging the court's factual findings, including its finding that BACTES acted as an agent of the requesting attorneys when it copied and transmitted the patient records at issue. Because Busby does not challenge any of the court's factual findings on appeal, Busby's argument concerning the validity (or alleged invalidity) of the agency contracts is immaterial to the disposition of this appeal.

Even if Busby's argument was relevant, the agency contracts did not violate Civil Code section 1668. They did not purport to exculpate BACTES for violations of section 1158 or any other law. Rather, they established new principal-agent relationships that fell outside the scope of section 1158 altogether.[7]

---

[7] BACTES requested that we take judicial notice of two unpublished judicial decisions, *Sui v. Sutter Bay Hospitals* (May 30, 2017, A146771, A148123) [nonpub. opn.] and *Lott v. Eden Medical Center* (Apr. 13, 2015, A140091) [nonpub. opn.]. According to BACTES, these decisions concluded that one of BACTES's competitors did not violate section 1158 when it used ROI practices and agency contracts similar to those used by BACTES. We deny BACTES's request, given that the unpublished opinions were not rendered in appeals related to the present appeal (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1171, 1173), and we are prohibited from relying on the opinions (Cal. Rules of Court, rule 8.1115(a)).

IV

DISPOSITION

The judgment is affirmed.  BACTES is entitled to its costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


DO, J.